United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 25, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATED BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 22-30195** |
| **ELAINE PALASOTA,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | **CHAPTER 11** |
| | § | |

## <u>MEMORANDUM OPINION</u>

Elaine Palasota objects to three proofs of claim filed by Prosperity Bank requesting a sum total of $2,659,668.70.  The Court conducted several hearings on the matter beginning on November 15, 2022 and concluding on February 6, 2023.  For the reasons stated herein, Elaine Palasota's objections to Prosperity Bank's Proofs of Claim Nos. 9, 10, and 11 are overruled.  Prosperity Bank's secured claims Nos. 9, 10 and 11 will be allowed in the combined total amount of $2,659,668.70.  Specifically, Prosperity Bank's secured Claim No. 9 is allowed in the amount of $1,293,093.39.  Prosperity Bank's secured Claim No. 10 is allowed in the amount of $925,426.55.  And Prosperity Bank's secured Claim No. 11 is allowed in the amount of $441,148.76.

### I.    FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.

### A.  Factual Background

1. Elaine Palasota ("*Mrs. Palasota*" or "*Debtor*") is the co-owner of BVS Construction, Inc. ("*BVS*") along with her husband, Ricky Joe Palasota, Sr. ("*Mr. Palasota*").[1]

2. In November of 2014, BVS and Mr. Palasota separately filed voluntary petitions under chapter 11 of the Bankruptcy Code[2] in the United States Bankruptcy Court for the Western District of Texas ("*BVS and Mr. Palasota's First Bankruptcy*").[3]

3. Mrs. Palasota was not a party to BVS and Mr. Palasota's First Bankruptcy.[4]

4. In September of 2015, BVS and Mr. Palasota filed an amended joint plan of reorganization (the "*2015 Plan*"). The 2015 Plan set out, in detail, the amounts BVS owed to its creditors.[5]

5. Of note, the 2015 Plan described the amounts BVS owed to one of its secured creditors, Prosperity Bank ("*Prosperity*"), on five separate promissory notes—which Prosperity rolled into one note prior to BVS's and Mr. Palasota's bankruptcy petitions.[6] The 2015 Plan provided as follows:

> Prosperity shall have an Allowed Secured Claim in the amount of $1,812,472.43 (the "Prosperity Claim"). The Prosperity Claim shall be paid based upon a 120 month amortization with interest at the rate of 5% per annum. Commencing on the Effective Date, the Debtor, BVS, shall make 59 equal payments of $ 19,224.72 and one payment on the 60th month of all outstanding principal and interest. The payments shall be due on the 15th day of each month. The Debtor shall receive credit on the Prosperity Claim for all amounts paid post-petition pre-confirmation on the Prosperity Claim.[7]

6. Mr. Palasota, in his individual capacity and on behalf of BVS, signed the 2015 Plan, to which no objection was filed.[8]

7. On September 25, 2015, the bankruptcy court confirmed the 2015 Plan; neither Mr. Palasota nor BVS appealed that order.[9]

8. For thirty-eight straight months following the Effective Date of the 2015 Plan, BVS made payments to Prosperity according to the terms of the 2015 Plan, which Prosperity applied to BVS's principal and interest obligations. But BVS did not make all fifty-nine monthly payments as required by the 2015 Plan, nor did it make the sixtieth "balloon payment,"

---

[1] ECF No. 1.
[2] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[3] ECF No. 216 at 9.
[4] *Id.* at 10.
[5] *Id.* at 9.
[6] *BVS Constr. v. Prosperity Bank (In re BVS Constr., Inc.)*, 18 F.4th 169, 171 (5th Cir. 2021).
[7] *Id.*
[8] *Id.*
[9] *Id.*

which was to equal the amount outstanding on the claim after BVS made its fifty-nine monthly payments.[10]

9.  In January of 2019, BVS again filed for bankruptcy under chapter 11 ("*BVS's Second Bankruptcy*").[11]

10.  In BVS's Second Bankruptcy, Prosperity filed a proof of claim in the amount of $1,333,695.84. According to Prosperity, this claim amount accounted for every payment it had received from BVS as of the petition date of the Second Bankruptcy.[12]

11.  BVS filed a claim objection arguing that the amount of Prosperity's claim in the second bankruptcy was incorrect because (a) it was calculated based on an incorrect claim amount in the 2015 Plan, and (b) it failed to account for certain payments that BVS made to Prosperity on the claim from July to October of 2015 and May to November of 2019.[13]

12.  Prosperity argued that it was BVS and Mr. Palasota that proposed the 2015 Plan that the bankruptcy court ultimately confirmed, and that BVS failed to object to Prosperity's claim in the 2015 Plan or otherwise seek direct appeal after the bankruptcy court confirmed the 2015 Plan. Prosperity maintained that the 2015 Plan set out its claim against BVS in detail, and that BVS clearly had no legitimate objection to that amount, as evidenced by its failure to object or appeal and by its subsequent payments to Prosperity pursuant to the 2015 Plan. Finally, Prosperity claimed that it applied the payments BVS made from July to October of 2015 to "accrued interest," and that its ledger reflected the payments it received from BVS between May and November of 2019.[14]

13.  At the conclusion of the hearing, the bankruptcy court orally overruled BVS's claim objection and allowed Prosperity's claim of $1,333,695.84. It found that the 2015 Plan, which BVS and Mr. Palasota proposed, described BVS's debt to Prosperity in great detail and neither BVS nor Mr. Palasota objected to or disputed Prosperity's claim amount in that plan. It further found that BVS made payments pursuant to the 2015 Plan for thirty-eight straight months and that BVS did not make the sixtieth "balloon payment." Based on these findings, it concluded that the doctrines of res judicata, judicial estoppel, and judicial admission barred BVS's claim objection in the second bankruptcy to the extent it was premised on the impropriety of Prosperity's claim in the 2015 Plan.[15]

14.  BVS timely filed a notice of appeal in the United States District Court for the Western District of Texas. The district court affirmed the judgment of the bankruptcy court and dismissed the appeal.[16]

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

15. BVS appealed to the Fifth Circuit. The Fifth Circuit affirmed the judgment of the bankruptcy court.[17]

16. On December 2, 2019, the Court confirmed BVS's Amended Plan of Reorganization (the "*2019 Plan*") in BVS's Second Bankruptcy.[18]

17. On June 1, 2021, Mr. Palasota again filed for bankruptcy protection in the Western District of Texas ("*Mr. Palasota's Second Bankruptcy*"). That bankruptcy was transferred to Case No. 21-32344 in the Southern District of Texas and was later dismissed.[19]

18. On January 1, 2022 (the "*Petition Date*"), Debtor filed for bankruptcy protection under chapter 11 of the Bankruptcy Code initiating the instant bankruptcy case in the Western District of Texas.[20]

19. On January 18, 2023, the Bankruptcy Court for the Western District of Texas entered an order transferring venue to the Southern District of Texas.[21]

20. On March 11, 2022, the Court entered an order approving the sale of a 507.45 acre tract in Milam County Texas for the total amount of $2,240,000.00 which authorized the payment of reasonable closing costs and expenses associated with the sale and further ordering the remainder of the funds to be held in Debtor's counsel's IOLTA account pending further orders of the Court.[22]

21. On April 26, 2022, Prosperity filed three secured proofs of claim: (1) No. 9 in the amount of $1,293,093.39; (2) No. 10 in the amount of $925,426.55.; and (3) No. 11 in the amount of $441,148.76.  The sum total requested by these three proofs of claim is $2,659,668.70.

22. On August 16, 2022, Prosperity filed "Motion Of Prosperity Bank For Order Approving Distribution Of Sales Proceeds" ("*Motion For Sales Proceeds*")[23] in which Prosperity Bank stated that "[a]s of August 5, 2022, Prosperity is owed $1,428,995.96 plus per diem interest of $172.23 from and after August 5, 2022, on its claim in the 2014 Bankruptcies."[24]

23. On September 22, 2022, Debtor filed: (1) "Objection To Proof Of Claim Number 9 Filed By Prosperity Bank" ("*Debtor's Objection to Claim No. 9*")[25]; (2) "Objection To Proof Of Claim Number 10 Filed By Prosperity Bank" ("*Debtor's Objection to Claim No. 10*")[26];

---

[17] *Id.*
[18] ECF No. 207 at 6.
[19] ECF No. 216 at 10.
[20] ECF No. 1.
[21] ECF No. 17.
[22] ECF No. 59.
[23] ECF No. 79.
[24] *Id.* at 6, ¶ 15.
[25] ECF No. 91.
[26] ECF No. 92.

and (3) "Objection To Proof Of Claim Number 11 Filed By Prosperity Bank" ("*Debtor's Objection to Claim No. 11*").[27]

24. On September 30, 2022, Prosperity filed: (1) "Prosperity Bank's Response To Debtor's Objection To Proof Of Claim Number 9" ("*Prosperity Bank's Response To Claim Objection No. 9*")[28]; (2) "Prosperity Bank's Response To Debtor's Objection To Proof Of Claim Number 10" ("*Prosperity Bank's Response To Claim Objection No. 10*")[29]; and (3) "Prosperity Bank's Response To Debtor's Objection To Proof Of Claim Number 11" ("*Prosperity Bank's Response To Claim Objection No. 11*").[30]

25. On November 15, 2022, the Court held an initial hearing ("*Initial Hearing*") and continued the matter to December 7, 2022.[31]

26. On November 29, 2022, Ash Grove Cement Company ("*Ash Grove*") filed: (1) "Ash Grove Cement Company's Comment To Elaine Palasota's Objection To Proof Of Claim Number 9 Of Prosperity Bank" ("*Ash Grove's Comment to Claim No. 9*")[32]; (2) "Ash Grove Cement Company's Comment To Elaine Palasota's Objection To Proof Of Claim Number 10 Of Prosperity Bank" ("*Ash Grove's Comment to Claim No. 10*")[33]; and (3) "Ash Grove Cement Company's Comment To Elaine Palasota's Objection To Proof Of Claim Number 11 Of Prosperity Bank" ("*Ash Grove's Comment to Claim No. 11*").[34]

27. On December 7, 2022, the Court held a further hearing ("*Second Hearing*") and continued the matter to February 6, 2023.[35]

28. On February 2, 2023, Ash Grove filed: (1) "Ash Grove Cement Company's Supplemental Comment to Elaine Palasota's Objection to Proof of Claim Number 9 of Prosperity Bank"[36] ("*Ash Groves Supplemental Comment to Claim No. 9*"); (2) "Ash Grove Cement Company's Supplemental Comment to Elaine Palasota's Objection to Proof of Claim Number 10 of Prosperity Bank"[37] ("*Ash Groves Supplemental Comment to Claim No. 10*"); and (3) "Ash Grove Cement Company's Supplemental Comment to Elaine Palasota's Objection to Proof of Claim Number 11 of Prosperity Bank"[38] ("*Ash Groves Supplemental Comment to Claim No. 11*").

---

[27] ECF No. 93.
[28] ECF No. 104.
[29] ECF No. 105.
[30] ECF No. 106.
[31] ECF No. 147.
[32] ECF No. 154.
[33] ECF No. 155.
[34] ECF No. 156.
[35] ECF No. 161.
[36] ECF No. 186.
[37] ECF No. 187.
[38] ECF No. 188.

29. On February 6, 2023, the Court held a final hearing ("*Final Hearing*") and ordered brief-ing.[39]

30. At the Final Hearing, the Court Struck Ash Grove's three supplemental briefs filed on February 2, 2023.[40]

31. On February 28, 2023, Debtor filed "Brief in Support of Objection to Proofs of Claim #9, #10 and #11 filed by Prosperity Bank"[41] ("*Debtor's Brief in Support*").

32. On February 28, 2023, Ash Grove filed "Ash Grove Cement Company's Brief in Support to Elaine Palasota's Objection to Proofs of Claim Numbers 9, 10, and 11 of Prosperity Bank"[42] ("*Ash Grove's Brief in Support*").

33. On March 20, 2023, Prosperity filed "Prosperity's Brief in Opposition to Debtor's Objections to Prosperity's Claims"[43] ("*Prosperity's Brief in Support*").

34. On March 31, 2023, Debtor filed "Reply Brief in Support of Objection to Proofs of Claim #9, #10 and #11 filed by Prosperity Bank"[44] ("*Debtor's Reply Brief*").

35. On April 3, 2023, Ash Grove filed "Ash Grove Cement Company's Reply Brief to Prosperity Bank's Brief in Opposition of Debtor's Objections to Prosperity's Claims"[45] ("*Ash Grove's Reply Brief*").

36. On April 25, 2023, Prosperity filed "Prosperity's Motion to Strike Elaine Palasota's And Oak Grove's Reply Briefs"[46] ("*Prosperity's Motion to Strike*").

## II.   CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[47] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court

---

[39] *See* Feb. 6, 2023 docket entry.
[40] *Id*.
[41] ECF No. 207.
[42] ECF No. 209.
[43] ECF No. 216.
[44] ECF No. 218.
[45] ECF No. 219.
[46] ECF No. 220.
[47] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).

will appropriately preside over the matter.[48]  This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O) this proceeding contains core matters, as it primarily involves proceedings concerning allowance and disallowance of claims against the estate and the administration of this estate.[49]  This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[50]

This Court may only hear a case in which venue is proper.[51]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtor resides in Bryan, Texas[52] and therefore, venue of this proceeding is proper.

## B.  Constitutional Authority to Enter a Final Order

This Court must evaluate whether it has the constitutional authority to enter an order in this case.  In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[53]  This Court has the constitutional authority to enter a final order here because this is a core proceeding and there is no *Stern* issue.  Interpreted narrowly, *Stern* is limited to one specific core proceeding, § 157(b)(2)(C), stripping bankruptcy courts of constitutional authority to enter a final order where a state law counterclaim is not resolved in the process

---

[48] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[49] *See* 11 U.S.C. § 157(b)(2)(A) & (O).

[50] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

[51] 28 U.S.C. § 1408.

[52] ECF No. 17.

[53] 564 U.S. at 503.

of ruling on a creditor's proof of claim.[54]  Section 157(b)(2)(C) is not implicated in this proceeding,

so this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court

from entering a final order here.

Alternatively, even if *Stern* applies to all of the categories of core proceedings, this Court

still concludes that *Stern* does not prohibit this Court from entering a final order in this dispute.  In

*Stern*, the debtor filed a counterclaim based solely on state law, and the resolution of this counter-

claim did not resolve the validity or invalidity, of the claim held by the defendant.  Here, Prosper-

ity's claims, despite requiring application of state law, arise from an express Code provision and

an express Bankruptcy Rule: § 502(a) and Rule 3007.  This suit is therefore easily distinguishable

from the dispute in *Stern*, and this Court is constitutionally authorized to enter a final order.

### III.   ANALYSIS

## A.  Section 502 and Bankruptcy Rule 3001

Section 502 provides that "a claim or interest, proof of which is filed under § 501 of this

title, is deemed allowed, unless a party in interest . . . objects."[55]  The legislative history of § 502

provides in relevant part, that "a proof of claim or interest is prima facie evidence of the claim or

interest.  Thus, it is allowed under subsection (a) unless a party in interest objects."[56]  While § 502

addresses the form and content of claims it does not, by itself, establish grounds for disallowance

of a claim.[57]  Rather, Bankruptcy Rule 3001 allocates the burden of proof with respect to a proof

of claim for which an objecting party has raised an objection that would warrant disallowance

under Section 502.[58]  The court in *In re DePugh* described the interplay between § 502 and

---

[54] *Pearl Res. LLC v. Allied OFS LLC (In re Pearl Res. LLC)*, 645 B.R. 530, 543 (Bankr. S.D. Tex. 2022).
[55] 11 U.S.C. § 502(a).
[56] House Rep. No. 95-595, 95th Cong., 1st Sess. 351 (1977); Senate Rep. No. 95-989, 95th Cong., 2d Sess. 62 (1978); *In re Northbelt, LLC*, 630 B.R. 228, 247 (Bankr. S.D. Tex. 2020).
[57] *In re Tran*, 369 B.R. 312, 320 (S.D. Tex. 2007) ("In other words, courts must generally allow a properly filed claim, but if one of the nine statutory provisions governs, then the court may summarily disallow the claim.").
[58] FED. R. BANKR. P. 3001.

Bankruptcy Rule 3001 during a proof of claim dispute.[59]  If, for example, a creditor files a proof of claim in full compliance with Bankruptcy Rule 3001, that claim is deemed prima facie valid and, if the debtor objects to that claim, he or she must produce evidence sufficient to rebut the presumption of validity and establish that the claim should be disallowed pursuant to § 502(b).[60] If, however, a creditor files a proof of claim that fails to comply with Bankruptcy Rule 3001, the Debtor has no evidentiary burden to overcome when lodging a claim objection pursuant to § 502(b), at which point the burden shifts back to the claimant to prove the underlying validity of its claim by a preponderance of the evidence in order to have its claim allowed.[61]

Bankruptcy Rule 3001 requires that a proof of claim: (1) be in writing; (2) make demand on the debtor's estate; (3) express the intent to hold the debtor liable for the debt; (4) be properly filed; and (5) be based upon facts which would allow, as a matter of equity, to have the document accepted as a proof of claim.[62]

## B.  Prosperity's Proofs of Claim

On April 26, 2022, Prosperity filed Proofs of Claim Nos. 9, 10, and 11.[63]  Each of these claims were in writing and made demands upon the Debtor's estate.  Specifically, Prosperity's Proof of Claim No. 9 asserted a secured claim in the amount of $1,293,093.39 for the balance of Elaine Palasota's portion of Agreed Judgment in Cause No. CV35108; *First Victoria National Bank vs. Ricky J. Palasota, Elaine Palasota, Ricky J. Palasota, Jr., Brazos Valley Services, and R & R Resources*; In the 361st District Court, Brazos County, Texas.[64]  Similarly, Prosperity's Proof of Claim No. 10 asserted a secured claim in the amount of $925,426.55 for Balance of Elaine

---

[59] *In re DePugh*, 409 B.R. 84, 97-98 (Bankr. S.D. Tex. 2009).
[60] *Id.*
[61] *Id.*; see 11 U.S.C. § 502; *In re O'Connor*, 153 F.3d 258, 260-61 (5th Cir. 1998); *In re Fid. Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988).
[62] *In re Armstrong*, 320 B.R. 97, 103-04 (Bankr. N.D. Tex. 2005).
[63] *See* Claims Register.
[64] *Id.*

Palasota's Portion of Agreed Judgment in Cause No. 12-000092-CV-361; *First Victoria National Bank vs. Ricky J. Palasota, Elaine Palasota, Ricky J. Palasota, Jr., Brazos Valley Services, and R & R Resources*; In the 361st District Court, Brazos County, Texas.[65]   Finally, Prosperity's Proof of Claim No. 11 asserted a secured claim in the amount of $441,148.76 for Balance of Elaine Palasota's Portion of Agreed Judgment in Cause No. 12-001063-CV-361; *First Victoria National Bank vs. Ricky J. Palasota, Elaine Palasota, and Ricky J. Palasota, Jr.*; In the 361st District Court, Brazos County, Texas (collectively the "*Judgments*").[66]

These claims each expressed an intent to hold Debtor liable for the debt by listing Mrs. Palasota as the debtor against whom they wish to recover.[67]   Furthermore, all three of the Proofs of Claim were properly filed using Official Form 410 and contained a copy of the relevant judgment, as required by Bankruptcy Rule 3001(c)(1) since the claims were based on a writing.[68]   Finally, the facts upon which these proofs of claim are based are three Judgments arising from a series of notes upon which Debtor, as a guarantor, defaulted.[69]

Accordingly, Proofs of Claim Nos. 9, 10, and 11, having been filed in full compliance with Bankruptcy Rule 3001, are deemed prima facie valid.

On September 22, 2022, Debtor filed Objections to Claims Nos. 9, 10, and 11 contesting the prima facie validity of each of the Claims.   As such, Debtor must produce evidence sufficient to rebut the presumption of validity and establish that each Claim should be disallowed pursuant to § 502(b).[70]   If Debtor fails to do so, the Claims will be allowed.[71]

**C.      Debtor's Objections to Proofs of Claim Nos. 9, 10, and 11**

---

[65] *Id.*
[66] *Id.*
[67] *See* Claims Register.
[68] *Id.*
[69] *Id.*
[70] *In re DePugh*, 409 B.R. at 97-98.
[71] *Id.*

On September 22, 2022, Debtor filed separate Objections to Prosperity's Proofs of Claim Nos. 9, 10, and 11.[72]  The basis of each of these Objections was identical – that the sum total of Prosperity's three Proofs of Claim ($2,659,668.70) exceeded the amount previously sought by Prosperity in the Motion For Sales Proceeds ($1,428,995.96) and thus Prosperity should be limited to the lower amount.[73]  At the conclusion of the Final Hearing, the Court ordered briefing.[74]  On February 28, 2023, Debtor filed Debtor's Brief in Support arguing that each of Prosperity's three Proofs of Claim should be reduced in amount due to: (1) waiver; (2) judicial estoppel; and (3) collateral estoppel.[75]  On March 31, 2023, Debtor filed Debtor's Reply contending that Prosperity is bound by a novation executed on the underlying agreements.[76]

On April 25, 2023, Prosperity's Motion to Strike was filed seeking, inter alia, to strike Debtor's Reply.[77]  Prosperity contends that Debtor's novation argument is a novel argument raised for the first time in a reply brief.[78]  In the Fifth Circuit, an "argument raised for first time in reply brief is waived."[79]  Since Debtor failed to assert her novation argument prior to her reply brief, this argument will be struck.

Accordingly, Prosperity's Motion to Strike is granted as to "Reply Brief in Support of Objection to Proofs of Claim #9, #10 and #11 filed by Prosperity Bank."[80]

---

[72] ECF Nos. 91, 92, 93.
[73] ECF No. 79.
[74] *See* docket entry Feb. 6, 2023.
[75] ECF No. 207.
[76] ECF No. 218.
[77] ECF No. 220.
[78] *Id.*
[79] *See e.g. Aircraft Holding Sols., LLC v. Learjet, Inc.*, Civil Action No. 3:18-CV-0823-D, 2022 U.S. Dist. LEXIS 31717, at *20 (N.D. Tex. 2022); *Jacobs v. Tapscott*, 2006 U.S. Dist. LEXIS 68619, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006); *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 551 (N.D. Tex. 2006); *In re Dunhill Res., Inc.*, No. 03-41264-H2-7, 2006 WL 2578862, at *3 (Bankr. S.D. Tex. Sept. 5, 2006)).
[80] ECF No. 218.

As a result, the Court need only consider arguments raised by Debtor in her Objections to three Proofs of Claim and in Debtor's Brief in Support.  In sum, Debtor contends that Prosperity's claims should be reduced in amount because: (1) Prosperity sought a lower amount in the Motion For Sales Proceeds; (2) judicial estoppel; (3) collateral estoppel; and (4) waiver.  The Court will discuss each in turn.

### 1.  Whether Prosperity should be limited to the amount sought in the Motion for Sales Proceeds

In Debtor's Objections to Proofs of Claim Nos. 9, 10, and 11, Debtor contends that the sum total of Prosperity's three Proofs of Claim exceeded the amount previously sought by Prosperity in the Motion For Sales Proceeds and thus Prosperity should be limited to the lower amount.[81]  In the Motion for Sales Proceeds, Prosperity asserted that it is owed a total debt of $1,428,995.96.[82] In Proofs of Claim Nos. 9, 10, and 11, Prosperity now seeks a sum total of $2,659,668.70.[83]

The problem with Debtor's first argument, however, is that Debtor provides no legal support for her conclusion.  Debtor merely offers the bald assertion that Prosperity should be limited to the previous position it took in the Motion For Sales Proceeds.[84]  Without any support, the Court finds Debtor's first argument unpersuasive.

Accordingly, Debtor's first argument is without merit.

### 2.  Whether judicial estoppel limits the amount sought by Prosperity in Proofs of Claim Nos. 9, 10, and 11

Debtor next argues that Prosperity's Proofs of Claim Nos. 9, 10, and 11 should be reduced due to judicial estoppel.[85]  "Judicial estoppel is a common law doctrine that prevents a party from

---

[81] ECF Nos. 91, 92, 93.
[82] ECF No. 79.
[83] *See* Claims Register.
[84] *Id.*
[85] ECF No. 207 at 9.

assuming inconsistent positions in litigation."[86]   The purpose of judicial estoppel is "'to protect the integrity of the judicial process,' by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest.'"[87]

Debtor argues that Prosperity should be judicially estopped from asserting claims for a total of $2,659,668.70 against Debtor because: (a) in BVS and Mr. Palasota's First Bankruptcy, Prosperity filed three Proofs of Claim and based the claims on the same notes in which Debtor was a guarantor; (b) in BVS and Mr. Palasota's First Bankruptcy, Prosperity took the position the 2015 Plan should be confirmed with the knowledge the notes upon which Debtor was a guarantor were the basis for the claim; (c) in BVS's Second Bankruptcy, Prosperity filed one Proof of Claim taking the position that its Proof of Claim in BVS's Second Bankruptcy was based upon its treatment in the First Bankruptcy; and (d) in BVS's Second Bankruptcy, the 2019 Plan specifically referred to the notes in which Debtor was a guarantor and the Order confirming the 2019 Plan specifically provided for Prosperity's claims to be paid in full.[88]   The Court will discuss each in turn.

a. **Whether Prosperity should be judicially estopped from asserting a claim for $2,659,668.70 because in the First Bankruptcy, Prosperity filed three Proofs of Claim and based the claims on the same notes in which Debtor was a guarantor**

Debtor contends that Prosperity should be judicially estopped from asserting a claim for $2,659,668.70 because in BVS and Mr. Palasota's First Bankruptcy, Prosperity filed three Proofs of Claim and based the claims on the same notes in which Debtor was a guarantor.[89]   Prosperity counters that § 524(e) precludes this argument and Debtor cannot demonstrate the elements of

---

[86] *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (quotation omitted).
[87] *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (1995) (alteration in original) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)).
[88] ECF No. 207 at 9.
[89] *Id.*

judicial estoppel.[90]  Since § 524(e) would prohibit Debtor's argument for judicial estoppel entirely, the Court will first examine the applicability of § 524(e).

### i.    Whether § 524(e) bars Debtor's judicial estoppel argument

The basis of Debtor's first judicial estoppel argument is that Prosperity's current position in Proofs of Claim Nos. 9, 10, and 11 requesting a sum total of $2,659,668.70 is plainly inconsistent with Prosperity filing three proofs of claim in BVS and Mr. Palasota's First Bankruptcy and basing it on the same notes in which Debtor was guarantor.[91]  Section 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity, for such debt."[92]   Here, Debtor's argument for judicial estoppel is based on Prosperity's filing of proofs of claim in BVS and Mr. Palasota's First Bankruptcy and not discharge.[93]  Since discharge is not implicated by this argument, § 524(e) does not apply.  Thus, § 524(e) does not preclude Debtor's first argument for judicial estoppel.

### ii. Whether the elements of judicial estoppel are met

The elements of judicial estoppel are: (1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.[94]  For the first element, Debtor contends that Prosperity's current position in Proofs of Claim Nos. 9, 10, and 11 requesting a sum total of $2,659,668.70 is plainly inconsistent with Prosperity filing three proofs of claim in BVS and Mr. Palasota's First Bankruptcy and basing it on the same notes in which Debtor was guarantor.[95]  However, Debtor makes no effort to articulate *how* these two positions are inconsistent but

---

[90] ECF No. 216.
[91] ECF No. 207.
[92] 11 U.S.C. § 524(e).
[93] ECF No. 207.
[94] *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (citation omitted).
[95] ECF No. 207.

merely offers a conclusory statement that it is so.  When Prosperity filed three proofs of claim in the First Bankruptcy, it asserted claims against BVS and Mr. Palasota but not Debtor.  Looking solely at the filing of the three proofs of claim, without more, Debtor fails to articulate how these proofs of claim are inconsistent with Prosperity's current position.  Therefore, Debtor cannot demonstrate the first element of judicial estoppel.  Since the remainder of the judicial estoppel analysis is predicated on satisfaction of the first element, the Court need not analyze the remaining two elements and Debtor's first argument for judicial estoppel fails.

**b.  Whether Prosperity should be judicially estopped from asserting a claim for $2,659,668.70 because in BVS and Mr. Palasota's First Bankruptcy, Prosperity took the position the 2015 Plan should be confirmed with the knowledge the notes upon which Debtor was a guarantor were the basis for the claim**

Debtor next argues that Prosperity should be judicially estopped from asserting a claim for $2,659,668.70 because in BVS and Mr. Palasota's First Bankruptcy, Prosperity took the position the 2015 Plan should be confirmed with the knowledge the notes upon which Debtor was a guarantor were the basis for the claim.[96]  Prosperity counters that § 524(e) precludes this argument and Debtor cannot demonstrate the elements of judicial estoppel.[97]  Since § 524(e) would prohibit Debtor's argument for judicial estoppel entirely, the Court will first examine the applicability of § 524(e).

**i.   Whether § 524(e) bars Debtor's judicial estoppel argument**

As stated previously, § 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity, for such debt."[98]  This includes the liability of a guarantor.[99]  The only exception to § 524(e) is when a confirmed plan of

---

[96] *Id.*
[97] ECF No. 216.
[98] 11 U.S.C. § 524(e).
[99] *See Austin Hardwoods v. Vanden Berghe*, 917 S.W.2d 320, 324 (Tex. App.—El Paso 1995, writ denied) ("It is settled law, both at the federal and state level, that a discharge in bankruptcy does not affect the liability of a guarantor.

reorganization expressly provides for discharge or release of claims against non-debtors.[100]  This

exception is limited, however.  In *In re Applewood*, the Fifth Circuit refused to enforce a release

against a third-party guarantor in a later action because the plan at issue "contained no provision

specifically releasing the personal guaranties of the [third party]."[101]  The release language pro-

vided:

> The provisions of the confirmed plan shall bind all creditors and parties in interest,
> whether or not they accept the plan and shall discharge the Debtor, its officers,
> shareholders and directors from all claims that arose prior to Confirmation.[102]

The third-party argued that the language provided for a general release.[103]  However, the Fifth

Circuit disagreed reasoning that since the provision did not *specifically* release the guarantor, who

was also an officer, from his personal guaranties, then the creditor was allowed to proceed with

his claim to recover from the guarantor.[104]

    In this case, Debtor argues that Prosperity should be judicially estopped from asserting a

claim for $2,659,668.70 because in BVS and Mr. Palasota's First Bankruptcy, Prosperity took the

position the 2015 Plan should be confirmed with the knowledge the notes upon which Debtor was

a guarantor were the basis for the claim.[105]  This argument invokes § 524(e) because it implies that

the discharge afforded to BVS and Mr. Palasota when the 2015 Plan was confirmed also altered

Mrs. Palasota's liability.  The only way in which § 524(e) would not apply is if the 2015 Plan

expressly provided for such relief for Mrs. Palasota as a non-party.  However, Debtor has not put

---

. . . [A]nd it is well-settled law that modification of a corporate debt through a confirmed reorganization in bankruptcy
does not constitute a material alteration of the underlying obligation so as to release a guarantor.").

[100] *Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.)*, 203 F.3d 914, 919 (5th
Cir. 2000) (refusing to enforce a release against a third-party guarantor in a later action because the plan at issue
contained no provision specifically releasing the personal guaranties of the third party).

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] ECF No. 207.

forth a single provision of the 2015 Plan which purports to expressly provide for such change. Since Debtor's argument invokes discharge and the exception does not apply, § 524(e) precludes Debtor from arguing that her liability as a third-party in BVS and Mr. Palasota's First Bankruptcy was altered by the 2015 Plan.  Therefore, Debtor's second argument for judicial estoppel fails and the Court need not address the elements of judicial estoppel.

    **c. Whether Prosperity should be judicially estopped from asserting a claim for $2,659,668.70 because in BVS's Second Bankruptcy, Prosperity filed one Proof of Claim taking the position that its Proof of Claim in BVS's Second Bankruptcy was based upon its treatment in BVS and Mr. Palasota's First Bankruptcy**

Debtor next argues that Prosperity should be judicially estopped from asserting a claim for $2,659,668.70 because in BVS's Second Bankruptcy, Prosperity filed one proof of claim taking the position that its Proof of Claim in BVS's Second Bankruptcy was based upon Prosperity's treatment in BVS and Mr. Palasota's First Bankruptcy.[106]  Prosperity counters that § 524(e) precludes this argument and Debtor cannot demonstrate the elements of judicial estoppel.[107]  Since § 524(e) would prohibit Debtor's argument for judicial estoppel entirely, the Court will first examine the applicability of § 524(e).

    **i.   Whether § 524(e) bars Debtor's judicial estoppel argument**

As stated previously, § 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity, for such debt."[108] Here, Debtor's argument for judicial estoppel is based on Prosperity's filing of a proof of claim in BVS's Second Bankruptcy.[109]  Since the filing of a proof of claim not does not invoke discharge, § 524(e) does not apply.  Thus, § 524(e) does not preclude Debtor's third argument for waiver.

    **ii. Whether the elements of judicial estoppel are met**

---

[106] ECF No. 207.
[107] ECF No. 216.
[108] 11 U.S.C. § 524(e).
[109] ECF No. 207.

The elements of judicial estoppel are: (1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.[110]  For the first element, Debtor contends that Prosperity's current position in Proofs of Claim Nos. 9, 10, and 11 requesting a sum total of $2,659,668.70 is plainly inconsistent with Prosperity filing a proof of claim in BVS's Second Bankruptcy based on the 2015 Plan.[111]  Again, Debtor makes no effort to articulate *how* these two positions are inconsistent but merely offers a conclusory statement that it is so.

When Prosperity filed a proof of claim in BVS's Second Bankruptcy, Prosperity asserted claims against BVS.[112]  The proof of claim was based on the changes to BVS's liability pursuant to the 2015 Plan.[113]  However, given that Debtor was not a party to BVS's Second Bankruptcy and that Debtor's liability was unaltered by the 2015 Plan, Debtor cannot demonstrate that the proof of claim filed by Prosperity in BVS's Second Bankruptcy is inconsistent with Prosperity's current position.  Therefore, since Debtor cannot demonstrate the first element of judicial estoppel and the remainder of the judicial estoppel analysis is predicated on satisfaction of the first element, the Court need not analyze the remaining two elements and Debtor's third argument for judicial estoppel fails.

### d. Whether Prosperity should be judicially estopped from asserting a claim for $2,659,668.70 because in BVS's Second Bankruptcy, the 2019 Plan specifically referred to the notes in which Debtor was a guarantor and the Order confirming the 2019 Plan specifically provided for Prosperity's claims to be paid in full

Debtor next argues that Prosperity should be judicially estopped from asserting a claim for $2,659,668.70 because in BVS's Second Bankruptcy, the 2019 Plan specifically referred to the

---

[110] *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (citation omitted).
[111] ECF No. 207.
[112] *Id.*
[113] *Id.*

notes in which Debtor was a guarantor and the Order confirming the 2019 Plan specifically provided for Prosperity's claims to be paid in full.[114]  Prosperity counters that § 524(e) precludes this argument and Debtor cannot demonstrate the elements of judicial estoppel.[115]  Since § 524(e) would prohibit Debtor's argument for judicial estoppel entirely, the Court will first examine the applicability of § 524(e).

### i.   Whether § 524(e) bars Debtor's judicial estoppel argument

As stated previously, § 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity, for such debt."[116]  In this case, Debtor argues that Prosperity should be judicially estopped from asserting a claim for $2,659,668.70 because in BVS's Second Bankruptcy, the terms of the 2019 Plan called for a lower claim against BVS, a co-obligor of Debtor on the Notes.[117]  This argument invokes § 524(e) because it implies that the discharge afforded to BVS when the 2019 Plan was confirmed also altered Mrs. Palasota's liability.  The only way in which § 524(e) would not apply is if the 2019 Plan expressly provided for such relief for Mrs. Palasota as a non-party.  However, Debtor has not put forth a single provision of the 2019 Plan which purports to expressly provide for such change.  Since Debtor's argument invokes discharge and the exception does not apply, § 524(e) precludes Debtor from arguing that her liability as a third-party in BVS's Second Bankruptcy was altered by the 2019 Plan.  Therefore, Debtor's final argument for judicial estoppel fails and the Court need not address the elements of judicial estoppel.

Accordingly, all of Debtor's arguments for judicial estoppel are without merit.

---

[114] ECF No. 207.
[115] ECF No. 216.
[116] 11 U.S.C. § 524(e).
[117] ECF No. 207.

### 3. Whether collateral estoppel limits the amount sought by Prosperity in Proofs of Claim Nos. 9, 10, and 11

Debtor's third argument is that Prosperity's Proofs of Claim Nos. 9, 10, and 11 should be reduced due to collateral estoppel.[118]  The elements of collateral estoppel under Texas law are: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.[119]

Debtor contends that the facts involving Prosperity's Proofs of Claim Numbers 9, 10 and 11 were litigated in BVS's Second Bankruptcy.  Debtor highlights that BVS objected to Prosperity's proof of claim in BVS's Second Bankruptcy and the Bankruptcy Court ultimately decided on the allowance of the claim.[120]  Debtor adds that the claim was further litigated in the District Court and the Fifth Circuit Court of Appeals ultimately determining that Prosperity had a claim in the amount of $1,333,675.84.[121]  However, Debtor's position is incorrect.  The litigation of Prosperity's proof of claim in BVS's Second Bankruptcy stemmed from positions taken by Mr. Palasota and BVS in BVS and Mr. Palasota's First Bankruptcy.[122]  Ultimately, the Fifth Circuit upheld that BVS was precluded from raising novel arguments regarding liability to Prosperity since those arguments were not made in the 2015 Plan.[123]  In sum, the issue litigated in BVS's Second Bankruptcy was whether claim preclusion doctrines applied based on *BVS's* proposed plan of reorganization action in BVS and Mr. Palasota's First Bankruptcy.[124]

---

[118] ECF No. 207 at 9.
[119] *Schwager v Fallas (In re Schwager)*, 21 F. 3d 177,181 (5th Cir. 1997).
[120] ECF No. 207 at 10.
[121] *Id.*
[122] ECF No. 216.
[123] *BVS Constr. v. Prosperity Bank (In re BVS Constr., Inc.)*, 18 F.4th 169, 171 (5th Cir. 2021).
[124] *Id.*

Here, a different issue is before the Court. Debtor was not a party in BVS and Mr. Palasota's First Bankruptcy and did not file a plan of reorganization in BVS and Mr. Palasota's First Bankruptcy. Rather than arguing that Debtor is bound by personally filing a plan of reorganization, Debtor is arguing that she is bound as a result of a third-party – BVS – filing a plan of reorganization. This represents a key difference from the litigation of Prosperity's proof of claim in BVS's Second Bankruptcy. As such, the facts sought to be litigated are not the same and the first element is not met. Since the remaining elements are dependent on satisfaction of the first element, the Court need not analyze the remaining elements.

Accordingly, Debtor's third argument is without merit.

### 4. Whether waiver limits the amount sought by Prosperity in Proofs of Claim Nos. 9, 10, and 11

Next, Debtor argues that Prosperity's Proofs of Claim Nos. 9, 10, and 11 should be reduced due to waiver under Texas state law.[125] Here, Debtor asserts that Prosperity waived its right to seek a total of $2,659,668.70 in Proofs of Claim Nos. 9, 10, and 11 by: (a) failing to differentiate between which parties were liable on their three proofs of claim in the First Bankruptcy; (b) failing to object to confirmation of the 2015 Plan; (c) filing just one Proof of Claim in BVS's Second Bankruptcy and basing it on the treatment of the Notes and Judgments afforded Prosperity in the 2015 Plan; and (d) filing a Demand Letter in December 2021 seeking only $1,257,282.22.[126] The Court will consider each in turn.

### a. Whether failure to differentiate parties on the three proofs of claim in BVS and Mr. Palasota's First Bankruptcy constitutes waiver

Debtor contends that Prosperity waived its right to assert a total claim of $2,659,668.70 by filing three proofs of claim in BVS and Mr. Palasota's First Bankruptcy and failing to differentiate

---

[125] ECF No. 207 at 7-8.
[126] ECF No. 207 at 8.

between which parties were liable.[127]  In Prosperity's Brief in Support, Prosperity counters that § 524(e) precludes this argument and Debtor cannot demonstrate the elements of waiver.[128]  Since § 524(e) would prohibit Debtor's argument for waiver entirely, the Court will first examine the applicability of § 524(e).

### i.  Whether § 524(e) bars Debtor's waiver argument

Section 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity, for such debt."[129]  Here, the action alleged to constitute waiver in Debtor's first waiver argument is the filing of three proofs of claim in BVS and Mr. Palasota's First Bankruptcy and not discharge.[130]  Since discharge is not implicated by this argument, § 524(e) does not apply.  Thus, § 524(e) does not preclude Debtor's first argument for waiver.

### ii.  Whether Debtor can demonstrate the elements of waiver

In order to successfully support a claim for waiver, Debtor must demonstrate: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) actual intent to relinquish the right, which can be inferred from conduct.[131]  The basis of Debtor's first waiver argument is that Prosperity filed three proofs of claim in the First Bankruptcy and failed to differentiate which parties were liable in these proofs of claim.[132]  Thus, the Court will determine whether each of the elements of waiver were met at that time.

### (1) an existing right, benefit, or advantage

---

[127] *Id.*
[128] ECF No. 216.
[129] 11 U.S.C. § 524(e).
[130] ECF No. 207 at 8.
[131] *Slaughter-Cooper v. Kelsey Seybold Med. Grp. P.A.*, 379 F.3d 285, 290 (5th Cir. 2004).
[132] ECF No. 207 at 8.

For the first element, at the time Prosperity filed three proofs of claim in BVS and Mr. Palasota's First Bankruptcy, Prosperity had an existing right to assert a claim against Debtor for liability arising from judgments on unpaid notes.  Debtor was a guarantor on these notes along with Mr. Palasota, and BVS.[133]  When issued in 2012, the three judgments provided for liability of (1) $598,391.88; (2) $388,094.16; and (3) $600,544.56 to Prosperity.[134]  The three judgments also provided for an interest rate of 18%.[135]  The right of Prosperity to assert a claim against Debtor satisfies the first element.

### (2) knowledge, actual or constructive, of its existence

Next, at the time Prosperity filed three proofs of claim in BVS and Mr. Palasota's First Bankruptcy, Prosperity had actual or constructive knowledge of its right to assert a claim against Debtor. Constructive knowledge is knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.[136]  Just two years prior to the filing of BVS and Mr. Palasota's First Bankruptcy, Prosperity had obtained the Judgments against Debtor, BVS, and Mr. Palasota.[137]  During BVS and Mr. Palasota's First Bankruptcy, Prosperity filed three proofs of claim to maintain its interest in these Judgments against BVS and Mr. Palasota, the only parties to BVS and Mr. Palasota's First Bankruptcy.[138]  Since Debtor was not a party to BVS and Mr. Palasota's First Bankruptcy, Prosperity was not obligated to file a proof of claim to preserve its interest against Debtor.  With reasonable care and diligence, Prosperity had at least constructive knowledge of its right to assert a claim against Debtor.  The second element is satisfied.

---

[133] ECF No. 216 at 7.
[134] *Id.* at 8.
[135] *Id.*
[136] *Black's Law Dictionary* (10th ed. 2014).
[137] ECF No. 216 at 8.
[138] *Id.* at 9.

**(3) actual intent to relinquish the right, which can be inferred from conduct**

Debtor contends that the third element is met because when Prosperity filed three proofs of claim in BVS and Mr. Palasota's First Bankruptcy, Prosperity did not specify on its proofs of claim which parties were liable.[139]  Rather, Prosperity simply identified the three underlying notes giving rise to the liability.[140]  Since Debtor was one of the parties who had guaranteed the notes, Debtor maintains that Prosperity relinquished its right to seek a higher amount against Debtor at that time.[141]

However, Debtor's position relies on the mistaken belief that the proofs of claim filed by Prosperity applied to Debtor.  Debtor was not a party to BVS and Mr. Palasota's First Bankruptcy[142] and thus, any demand made in a proof of claim applied only to the filing debtors in BVS and Mr. Palasota's First Bankruptcy – BVS and Mr. Palasota.  Furthermore, just because Debtor was a guarantor on the same notes giving rise to the liability of Mr. Palasota and BVS, does not mean that Debtor's liability was impacted by the proofs of claim.  In fact, one of the principal purposes for obtaining a guarantor to a note is to provide an alternative source of repayment if the principal obligor declares bankruptcy.[143]  Since Prosperity's filing of three proofs of claim in BVS and Mr. Palasota's First Bankruptcy did not impact Debtor's liability,[144] Debtor cannot demonstrate that Prosperity demonstrated an actual intent to relinquish its right to assert a higher amount against Debtor.  Therefore, Debtor cannot establish the third element and Debtor's first argument for waiver fails.

**b. Whether failure to object to confirmation of the 2015 Plan constitutes waiver**

---

[139] ECF No. 207 at 5.
[140] *Id.*
[141] *Id.*
[142] ECF No. 216 at 9.
[143] *R.I.D.C. Indus. Dev. Fund v. Snyder*, 539 F.2d 487, 491 (5th Cir. 1976).
[144] ECF No. 216 at 9.

Debtor next argues that Prosperity's failure to object to the 2015 Plan constitutes waiver of its right to assert a total claim of $2,659,668.70 against Debtor.[145]  Once again, Prosperity counters that § 524(e) precludes this argument and Debtor cannot demonstrate the elements of waiver.[146]  Since § 524(e) would prohibit Debtor's argument for waiver entirely, the Court will first examine the applicability of § 524(e).

### i.   Whether § 524(e) bars Debtor's waiver argument

As stated above, Section 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity, for such debt."[147]  This includes the liability of a guarantor.[148]  The only exception to § 524(e) is when a confirmed plan of reorganization expressly provides for discharge or release of claims against non-debtors.[149]

In this case, Debtor argues that Prosperity's failure to object to the 2015 Plan constitutes waiver of its right to assert a total claim of $2,659,668.70 against Debtor.[150]  This argument invokes § 524(e) because it implies that the discharge afforded to BVS and Mr. Palasota when the 2015 Plan was confirmed also altered Mrs. Palasota's liability.  The only way in which § 524(e) would not apply is if the 2015 Plan expressly provided for such relief for Mrs. Palasota as a non-party.  However, Debtor has not put forth a single provision of the 2015 Plan which purports to expressly provide for such change.  As a result, under § 524(e), Debtor is precluded from arguing that her liability as a third-party in BVS and Mr. Palasota's First Bankruptcy was altered by the

---

[145] *Id.* at 8.

[146] ECF No. 216.

[147] 11 U.S.C. § 524(e).

[148] *See Austin Hardwoods v. Vanden Berghe*, 917 S.W.2d 320, 324 (Tex. App.—El Paso 1995, writ denied) ("It is settled law, both at the federal and state level, that a discharge in bankruptcy does not affect the liability of a guarantor. . . . [A]nd it is well-settled law that modification of a corporate debt through a confirmed reorganization in bankruptcy does not constitute a material alteration of the underlying obligation so as to release a guarantor.").

[149] *Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.)*, 203 F.3d 914, 919 (5th Cir. 2000) (refusing to enforce a release against a third-party guarantor in a later action because the plan at issue contained no provision specifically releasing the personal guaranties of the third party).

[150] *Id.* at 8.

2015 Plan.  Therefore, Debtor's second argument for waiver is precluded by § 524(e) and the Court

need not address the elements of waiver.  Debtor's second argument for waiver fails.

### c. Whether filing just one proof of claim in BVS's Second Bankruptcy and basing it on the treatment of the notes and judgments afforded to Prosperity in the 2015 Plan constitutes waiver

Debtor next argues that Prosperity filing a proof of claim in BVS's Second Bankruptcy

based on the 2015 Plan constituted waiver.[151]  Again, Prosperity counters that § 524(e) precludes

this argument and Debtor cannot demonstrate the elements of waiver.[152]  Since § 524(e) would

prohibit Debtor's argument for waiver entirely, the Court will first examine the applicability of §

524(e).

### i.   Whether § 524(e) bars Debtor's waiver argument

The basis of Debtor's third waiver argument is that Prosperity waived its right to collect a

higher sum against Debtor by filing a proof of claim in BVS's Second Bankruptcy.  Specifically,

Debtor argues that since the proof of claim filed by Prosperity in BVS's Second Bankruptcy was

based on the 2015 Plan, Prosperity waived its right to collect a higher sum against Debtor.[153]

As stated previously, § 524(e) provides that the "discharge of a debt of the debtor does not

affect the liability of any other entity on, or the property of any other entity, for such debt."[154]

Here, the action alleged to constitute waiver in Debtor's third waiver argument is the filing of a

proof of claim in BVS's Second Bankruptcy.[155]  Similar to Debtor's first argument for waiver, the

filing of a proof of claim does not involve discharge.  Thus, § 524(e) does not preclude Debtor's

third argument for waiver.

---

[151] ECF No. 207 at 8.
[152] ECF No. 216.
[153] ECF No. 207 at 8.
[154] 11 U.S.C. § 524(e).
[155] ECF No. 207 at 8.

### ii.  Whether Debtor can demonstrate the elements of waiver

Debtor's third argument for waiver is based on Prosperity filing a proof of claim in BVS's Second Bankruptcy.[156]  In order to successfully support a claim for waiver, Debtor must demonstrate: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) actual intent to relinquish the right, which can be inferred from conduct.[157]  Thus, the Court will determine whether each of the elements of waiver were met at that time.

### (1) an existing right, benefit, or advantage

For the first element, at the time Prosperity filed a proof of claim in BVS's Second Bankruptcy, Prosperity had an existing right to assert a claim against Debtor for liability arising from judgments on unpaid notes.  Debtor was a guarantor on these notes along with Mr. Palasota, and BVS.[158]  When issued in 2012, the three judgments provided for liability of (1) $598,391.88; (2) $388,094.16; and (3) $600,544.56 to Prosperity.[159]  The three judgments also provided for an interest rate of 18%.[160]  However, Mr. Palasota and BVS each filed chapter 11 petitions and their jointly filed 2015 Plan reduced the interest rate on the notes to 5%.[161]  Since Debtor was not a party to BVS and Mr. Palasota's First Bankruptcy, her liability to Prosperity was not impacted by the 2015 Plan.  The right of Prosperity to assert a claim against Debtor satisfies the first element.

### (2) knowledge, actual or constructive, of its existence

Next, at the time Prosperity filed a proof of claim in BVS's Second Bankruptcy, Prosperity had actual or constructive knowledge of its right to assert a claim against Debtor. Constructive knowledge is knowledge that one using reasonable care or diligence should have, and therefore

---

[156] ECF No. 207.
[157] *Slaughter-Cooper v. Kelsey Seybold Med. Grp. P.A.*, 379 F.3d 285, 290 (5th Cir. 2004).
[158] ECF No. 216 at 7.
[159] *Id.* at 8.
[160] *Id.*
[161] *Id.*

that is attributed by law to a given person.[162]   In 2012, Prosperity obtained the Judgments against Debtor, BVS, and Mr. Palasota.[163]   During BVS and Mr. Palasota's First Bankruptcy, Prosperity filed a proof of claim to maintain this interest against BVS and Mr. Palasota, the only parties to BVS and Mr. Palasota's First Bankruptcy.[164]   Since Debtor was not a party to BVS and Mr. Palasota's First Bankruptcy, Prosperity was not obligated to file a proof of claim to preserve its interest against Debtor.[165]   Similarly, in BVS's Second Bankruptcy, BVS was the only party obligated on the Judgments to file for bankruptcy.   Thus, Debtor's liability to Prosperity was not impacted by BVS's Second Bankruptcy either.   With reasonable care and diligence, Prosperity had at least constructive knowledge of its right to assert a claim against Debtor.   The second element is satisfied.

### (3) actual intent to relinquish the right, which can be inferred from conduct

Debtor contends that the third element is met because Prosperity filed a proof of claim in BVS's Second Bankruptcy and adjusted the amount demanded to reflect the changes to Mr. Palasota and BVS's liability under the 2015 Plan.[166]   As stated in the preceding sections, the 2015 Plan did not apply to Debtor and had no impact on Debtor's liability to Prosperity.[167]   Furthermore, Debtor was not a party to BVS's Second Bankruptcy and Prosperity had no obligation to file a proof of claim to preserve its interest against Debtor.[168]   Thus, the fact that Prosperity's proof of claim filed in BVS's Second Bankruptcy was based on the 2015 Plan does not demonstrate that Prosperity intended to relinquish its right to assert a higher claim against Debtor.   Therefore, Debtor cannot establish the third element and Debtor's third argument for waiver fails.

---

[162] *Black's Law Dictionary* (10th ed. 2014).
[163] ECF No. 216 at 7.
[164] *Id.*
[165] *Id.*
[166] *Id.*
[167] *Id.*
[168] *Id.*

### d. Whether sending a Demand Letter in December 2021 seeking only $1,257,282.22 constitutes waiver

Debtor's final argument for waiver is that Prosperity sent a demand letter to Debtor in December 2021 seeking less than the total amount currently asserted in Prosperity's three Proofs of Claim.[169]  This time, Prosperity does not counter that § 524(e) precludes Debtor's argument but simply that Debtor cannot demonstrate the elements of waiver.

In order to successfully support a claim for waiver, Debtor must demonstrate: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) actual intent to relinquish the right, which can be inferred from conduct.[170]  Debtor's fourth argument for waiver is based on Prosperity sending a Demand Letter to Debtor in December 2021.[171]  Thus, the Court will determine whether each of the elements of waiver were met at that time.

### (1) an existing right, benefit, or advantage

For the first element, when Prosperity sent the Demand Letter in December 2021, Prosperity had an existing right to assert a claim against Debtor for liability arising from judgments on unpaid notes which included 18% interest.[172]  Debtor was a guarantor on these notes along with Mr. Palasota, and BVS.[173]  When issued in 2012, the three judgments provided for liability of (1) $598,391.88; (2) $388,094.16; and (3) $600,544.56 to Prosperity.[174]  The three judgments also provided for an interest rate of 18%.[175]  However, Mr. Palasota and BVS each filed chapter 11 petitions and their jointly filed 2015 Plan reduced the interest rate on the notes to 5%.[176]  Since Debtor was not a party to the First Bankruptcy, her liability to Prosperity was not impacted by the

---

[169] *Id.* at 8.
[170] *Slaughter-Cooper v. Kelsey Seybold Med. Grp. P.A.*, 379 F.3d 285, 290 (5th Cir. 2004).
[171] ECF No. 216.
[172] *Id.* at 8.
[173] *Id.*
[174] *Id.*
[175] *Id.*
[176] *Id.*

2015 Plan.  Similarly, Debtor was not a party to BVS's Second Bankruptcy nor named in the 2019

Plan.[177] The right of Prosperity to assert a claim against Debtor satisfies the first element.

### (2) knowledge, actual or constructive, of its existence

Next, when Prosperity sent the Demand Letter in December 2021, Prosperity had actual or

constructive knowledge of its right to assert a claim against Debtor.  Constructive knowledge is

knowledge that one using reasonable care or diligence should have, and therefore that is attributed

by law to a given person.[178]   In 2012, Prosperity obtained the Judgments against Debtor, BVS,

and Mr. Palasota.[179]  During BVS and Mr. Palasota's First Bankruptcy, Prosperity filed a proof of

claim to maintain this interest against BVS and Mr. Palasota, the only parties to BVS and Mr.

Palasota's First Bankruptcy.[180]  Since Debtor was not a party to BVS and Mr. Palasota's First

Bankruptcy, Prosperity was not obligated to file a proof of claim to preserve its interest against

Debtor.  Similarly, in BVS's Second Bankruptcy, BVS was the only party obligated on the Judg-

ments to file for bankruptcy.  Thus, Debtor's liability to Prosperity was not impacted by BVS's

Second Bankruptcy either.  With reasonable care and diligence, Prosperity had at least constructive

knowledge of its right to assert a claim against Debtor.  The second element is satisfied.

### (3) actual intent to relinquish the right, which can be inferred from conduct

In regard to the third element, Prosperity must demonstrate actual intent to relinquish a

right, which can be inferred from conduct.[181]  The intent to waive "must be clear, decisive, and

---

[177] *Id.*
[178] *Black's Law Dictionary* (10th ed. 2014).
[179] ECF No. 216.
[180] *Id.*
[181] *Slaughter-Cooper*, 379 F.3d at 290.

unequivocal."[182]   A court should conclude a waiver occurred only when a party unequivocally manifested the intent not to assert its rights.[183]

In December 2021, Prosperity sent a demand letter to Debtor, Mr. Palasota, Ricky Palasota Jr., and BVS seeking $1,257,282.22.[184]   In part, the demand letter states: "Prosperity demands that you immediately pay all amounts due under the Loan Documents, as modified by the Bankruptcy Plan."[185]   Debtor asserts that since the demand letter collectively requested $1,257,282.22 from Debtor, Mr. Palasota, Ricky Palasota Jr., and BVS rather than specifically demanding $2,659,668.70 from Debtor, Prosperity has waived its right to assert a claim for more than $1,257,282.22 in the present case.[186]

Notably, the demand letter never expressly states that Prosperity is relinquishing its right to assert a claim for more than $1,257,282.22 against Debtor.[187]   Instead, Debtor argues that Prosperity's intent to relinquish the right can be inferred from the fact that only a single sum was demanded from each of the parties, including Debtor.[188]   In response, Prosperity highlights additional text in the Demand Letter which states: "If you are receiving this notice and you are not a debtor or you have been discharged in bankruptcy, you are receiving this notice for information purposes only."[189]   Prosperity asserts that Mrs. Palasota was not a debtor in any of the previous bankruptcies and that she was not discharged in bankruptcy.[190]   Thus, Prosperity contends that the demand letter was only sent to Mrs. Palasota for informational purposes.[191]

---

[182] *Mesa S. CWS Acquisition, LP v. Deep Energy Expl. Partners, LLC*, No. 14-18-00708-CV, 2019 Tex. App. LEXIS 10107, at *7 (Tex. App.—Houston [14th Dist.] Nov. 21, 2019, no pet.).
[183] *Id.*
[184] ECF No. 208-15.
[185] *Id.* at 2.
[186] ECF No. 207.
[187] ECF No. 208-15.
[188] ECF No. 207.
[189] ECF No. 208-15.
[190] ECF No. 216.
[191] *Id.*

One problem  with Prosperity's argument is that the term "debtor" was not defined in the demand letter.[192]  Therefore, the use of "debtor" may have been intended to mean a bankruptcy debtor or simply a debtor on the underlying notes.  If "debtor" was intended to mean bankruptcy debtor then the terms of the demand letter provide that it was sent to Mrs. Palasota simply for informational purposes.  However, if "debtor" was intended to mean debtor on the underlying notes then the terms of demand letter provide that the demand was made upon Mrs. Palasota. Given the absence of a definition of "debtor," the use in the demand letter is ambiguous.

Nonetheless, as stated above, in order to demonstrate Prosperity's intent to relinquish the right to assert a higher claim against Debtor, she has the burden of showing that Prosperity's intent to waive was "clear, decisive, and unequivocal."[193]  However, the only piece of evidence Debtor offers in support of her position is the demand letter.[194]  Based on the interpretation of the term "debtor," the demand letter either demanded a sum of $1,257,282.22 from Debtor or was sent to her only for informational purposes.  Given that either reading is plausible, Debtor has not met her burden of showing that Prosperity had "clear, decisive, and unequivocal" intent to relinquish the right to assert a higher claim against Debtor.  Therefore, Debtor cannot establish the third element and Debtor's final argument for waiver fails.

Accordingly, since all of Debtor's arguments have failed, Debtor's Objection to Prosperity's Proofs of Claim Nos. 9, 10, and 11 are overruled.

**D.     Whether Ash Grove properly objected to Proofs of Claim Nos. 9, 10, and 11**

On November 29, 2022, Creditor Ash Grove filed: (1) Ash Grove's Comment to Claim No. 9; (2) Ash Grove's Comment to Claim No. 10; and (3) Ash Grove's Comment to Claim No.

---

[192] ECF No. 208-15.
[193] *Mesa S. CWS Acquisition, LP v. Deep Energy Expl. Partners, LLC*, No. 14-18-00708-CV, 2019 Tex. App. LEXIS 10107, at *7 (Tex. App.—Houston [14th Dist.] Nov. 21, 2019, no pet.).
[194] ECF No. 207.

11.[195]  Each of these briefs claimed to be "in support" of Debtor's Objections to Claim Nos. 9, 10, and 11.[196]  The arguments raised by Ash Grove in its three briefs contend that Prosperity is precluded from asserting a claim against Debtor because: (1) res judicata applies; (2) judicial estoppel applies; and (3) collateral estoppel applies.[197]  Notably, at that point in the litigation, Debtor had only filed its three Objections to Proofs of Claim Nos. 9, 10, and 11 alleging that the sum total of Prosperity's three Proofs of Claim exceeded the amount previously sought by Prosperity in the Motion For Sales Proceeds and thus Prosperity should be limited to the lower amount.[198]  Thus, the three additional arguments asserted by Ash Grove were not "in support" of Debtor's Objections to Claim Nos. 9, 10, and 11 but instead raised entirely new grounds.

Post-trial, in Debtor's Brief, Debtor eventually adopted Ash Grove's judicial estoppel and collateral estoppel arguments.[199]  Nonetheless, Ash Grove itself never filed a proper claim objection.  Even if the Court were to construe Ash Grove's three briefs in support as standalone objections, these would be in violation of numerous local rules.[200]  Furthermore, Ash Grove has never taken the position that it filed its own claim objections but simply that its briefs are in support of Debtor's contentions. Thus, the Court need not consider Ash Grove's arguments in its three briefs in support.

Next, after the conclusion of the Final Hearing, Ash Grove filed Ash Grove's Brief in Support arguing that each of the three Proofs of Claim should be reduced due to: (1) res judicata; (2) judicial estoppel; (3) collateral estoppel; (4) waiver; and (5) election of remedies.[201]  However,

---

[195] ECF Nos. 154, 155, 156.
[196] *Id.*
[197] *Id.*
[198] ECF Nos. 91, 92, 93.
[199] ECF No. 207.
[200] S.D.T.X. Bankr. Local Rule 3007-1(a) requires that "The objection must include an affidavit signed by a person with personal knowledge supporting the objection."; S.D.T.X. Bankr. Local Rule 3007-1(b)-(c) requires specific notice language.
[201] ECF No. 209.

neither Objections to Prosperity's Proofs of Claim Nos. 9, 10, and 11 nor Debtor's Brief in Support assert theories of res judicata or election of remedies.  Since the res judicata and election of remedies arguments are not part of a properly filed claim objection and do not support Debtor's Objections to Prosperity's Proofs of Claim Nos. 9, 10, and 11 or Debtor's Brief in Support, the Court need not consider Ash Grove's additional arguments.

Finally, on April 3, 2023, Ash Grove filed Ash Grove's Reply reasserting the five arguments previously raised in its Post-Trial Brief and additionally contending that: (1) Prosperity is bound by a novation executed on the underlying agreements; and (2) only Proof of Claim No. 11 applies to Debtor.[202]  As with Debtor's Post-Trial Reply, Prosperity moved to strike "Ash Grove Cement Company's Reply Brief to Prosperity Bank's Brief in Opposition of Debtor's Objections to Prosperity's Claims"[203] arguing that "argument raised for first time in reply brief is waived."[204] Here, not only was Ash Grove's Reply filed without leave of Court but additionally, it improperly raises novel arguments in a reply brief.

Accordingly, Prosperity's Motion to Strike is granted as to "Ash Grove Cement Company's Reply Brief to Prosperity Bank's Brief in Opposition of Debtor's Objections to Prosperity's Claims."[205]

## IV.     CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

---

[202] ECF No. 219.
[203] *Id.*
[204] ECF No. 220 at 2 (citing *In re Dunhill Res., Inc.*, No. 03-41264-H2-7, 2006 WL 2578862, at *3 (Bankr. S.D. Tex. Sept. 5, 2006)).
[205] ECF No. 219.

SIGNED May 25, 2023

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge